# United States Court of Appeals
## For the First Circuit

No. 02-2011

RUFINO MUNIZ-RIVERA, ET AL.,
Plaintiffs, Appellants,

v.

UNITED STATES OF AMERICA,
Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Héctor M. Laffitte, U.S. District Judge]

Before

Torruella, Circuit Judge,

Coffin, Senior Circuit Judge,

and Selya, Circuit Judge.

Ruth Santiago for appellants.
Steve Frank, Attorney, Appellate Staff, Civil Division, Dep't of Justice, with whom Robert D. McCallum, Jr., Assistant Attorney General, Guillermo Gil, United States Attorney, and Robert S. Greenspan, Attorney, were on brief, for appellee.

April 7, 2003

**SELYA**, <u>Circuit Judge</u>. This appeal requires us to address the parameters of the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680, and, in particular, its misrepresentation and discretionary function exceptions. The plaintiffs (appellants here) are 108 persons who own a total of 67 residential properties in Salinas, Puerto Rico. These homes are situated in two housing developments that have undergone repeated flooding. Noting that federal officials played a significant role in the planning, siting, construction, and financing of the projects, the plaintiffs seek to hold the government answerable in damages. They sue under the FTCA, a statutory scheme that carves out a tort-based exception to the federal government's sovereign immunity. But the FTCA's exception to sovereign immunity itself contains exceptions. Because the plaintiffs' claims, as stated, fall within spheres that the FTCA abjures, we conclude that the district court properly dismissed the amended complaint for lack of subject matter jurisdiction. <u>See</u> Fed. R. Civ. P. 12(b)(1).

We afford plenary review to a district court's order of dismissal for lack of subject matter jurisdiction. <u>Corrada Betances</u> v. <u>Sea-Land Serv., Inc.</u>, 248 F.3d 40, 44 (1st Cir. 2001). At the pleading stage, such an order is appropriate only when the facts alleged in the complaint, taken as true, do not justify the exercise of subject matter jurisdiction. <u>Royal</u> v. <u>Leading Edge Prods., Inc.</u>, 833 F.2d 1, 1 (1st Cir. 1987). In line with the

foregoing, we glean the relevant background information from the plaintiffs' amended complaint, accepting the well-pleaded factual averments contained therein and indulging all reasonable inferences in the plaintiffs' favor. Valentin v. Hosp. Bella Vista, 254 F.3d 358, 365 (1st Cir. 2001).

The plaintiffs purchased their homes at various times between 1973 and 1995. All of them obtained loans through the Farmers Home Administration (FmHA), the Federal Housing Administration (FHA), or some other federal agency. They attribute their current predicament to the government's negligence.

In their view, the principal difficulty is that the government sited the housing developments along the Nigua River basin. That area has endured flooding both before and after the developments were built. The amended complaint enumerates no fewer than eight major floods (occurring in 1928, 1933, 1956, 1970, 1975, 1985, 1992, and 1996). Progressive soil movement has placed unaccustomed strains on foundations, and most plaintiffs report structural damage to walls, roofs, and floors. Moreover, poor drainage results in a backflow of sewage whenever flooding occurs. Over time, these conditions have taken their toll: the plaintiffs say that their dwellings are now in "total ruin" and "unfit" for human habitation. They themselves have experienced mental anguish and emotional distress.

The plaintiffs filed unsuccessful administrative claims with the appropriate agencies in 1998 and 2000 and, in the same time frame, brought suit in the United States District Court for the District of Puerto Rico.[1] Their amended complaint alleges that the government has had an intimate involvement with the planning and construction of the housing developments. For example, federal agencies (1) approved the specifications under which the dwellings were built; (2) granted mortgage loans in which they reserved the right to inspect the properties and obligated the plaintiffs to execute any repairs that they requested; (3) compelled the sellers of the homes to issue builders' warranties; and (4) retained the right to insist upon certain types of insurance coverage. The amended complaint proceeds to list a litany of acts and omissions that form the basis for the government's putative liability. These include the government's supposed failures to (1) inspect the plaintiffs' properties with adequate care; (2) scrutinize the topography and detect the substantial likelihood of future flooding; (3) provide reasonable oversight during construction; (4) warn the plaintiffs that their homes were in a floodway zone; (5) require the plaintiffs to carry flood insurance (or advise them of

---

[1]Originally, the plaintiffs asserted claims premised not only on the FTCA but also on the Little Tucker Act, 28 U.S.C. § 1346(a)(2), and Puerto Rico law. In an unpublished order, the district court dismissed all of the non-FTCA claims. See Muñiz-Rivera v. United States, No. 98-2001 (D.P.R. Sept. 25, 2000). Because the plaintiffs have not challenged that order, we confine ourselves to a consideration of the FTCA claims.

the need for it); and (6) take appropriate measures to protect the houses from flooding.

The government responded to the plaintiffs' amended complaint with a motion to dismiss. The district court, in a scholarly opinion, granted the motion. Muñiz-Rivera v. United States, 204 F. Supp. 2d 305 (D.P.R. 2002). The plaintiffs now appeal that ruling. Although our reasoning differs slightly from the district court's, we affirm the order of dismissal. See Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994) (explaining that an appeals court is "free to affirm the judgment below on any independently sufficient ground made manifest by the record").

The FTCA constitutes "a limited waiver of the federal government's sovereign immunity" against private suits. Shansky v. United States, 164 F.3d 688, 690 (1st Cir. 1999). The narrowing adjective is necessary because there are a number of situations in which the waiver will not attach. The government contends that the plaintiffs' claims fall within the compass of these exceptions. If so, the instant action is outside the ambit of federal subject matter jurisdiction. See Hydrogen Tech. Corp. v. United States, 831 F.2d 1155, 1161 (1st Cir. 1987) (holding that the FTCA's exceptions "define the limits of federal subject matter jurisdiction in this area"). We test the government's hypothesis

by classifying the plaintiffs' claims and then evaluating each category of claims through the prism of the FTCA's exceptions.

The first category of claims includes the plaintiffs' accusations that the government negligently failed to warn of the danger of future flooding, advise the plaintiffs of the need for flood insurance, and inform them that their homes were not constructed stoutly enough to withstand the ineluctable forces of nature. Despite the plaintiffs' disclaimers, these allegations necessarily rest on the premise that the federal government had a duty to exercise due care in communicating useful information regarding the safety and security of the plaintiffs' properties; that the plaintiffs reasonably relied on government officials to fulfill this duty; and that the government let them down.

We need not decide whether the government owed such a duty to the plaintiffs. Assuming, for argument's sake, that it did, any breach of the duty would fall squarely within the FTCA's misrepresentation exception.

The misrepresentation exception immunizes the United States from liability for "[a]ny claim arising out of . . . misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). The exception extends to a wide range of communicative activity (including failures of communication). The leading case on this exception is United States v. Neustadt, 366 U.S. 696 (1961), in which a home buyer reasonably relied on an

erroneous FHA appraisal. Id. at 698-700. In declaring that the plaintiff's claim for ensuing economic harm was barred by the misrepresentation exception, the Supreme Court observed that, in enacting section 2680(h), Congress "clearly meant to exclude claims arising out of negligent, as well as deliberate, misrepresentation." Id. at 702. Thus, the exception insulates the government against liability for conveying false or inaccurate information. Id. at 706-07; see also Jimenez-Nieves v. United States, 682 F.2d 1, 4 (1st Cir. 1982) (noting that misrepresentation, as an independent tort, is comprised of the dissemination of false information and the reliance by the plaintiff upon that information). The case law makes manifest that the prophylaxis of the misrepresentation exception extends to failures of communication. See, e.g., JBP Acquisitions v. United States, 224 F.3d 1260, 1265 (11th Cir. 2000); Green v. United States, 629 F.2d 581, 584 (9th Cir. 1980).

In this case, the plaintiffs' first set of claims are grounded in just such a theory of liability. The plaintiffs contend that the government's intimate role in approving, financing, and monitoring the housing projects implicitly conveyed an assurance that the homes constituted secure domiciles, and that the lack of any warning calculated to alert the plaintiffs to the likelihood of future harm reinforced those implied assurances. Even if such acts and omissions were negligent — a matter on which

we take no view — the misrepresentation exception precludes the assertion of a cause of action against the government based upon either miscommunication or non-communication of the information in question. See JBP Acquisitions, 224 F.3d at 1266 (holding that a "failure to communicate, as well as direct miscommunication, is encompassed by the misrepresentation exception"); Green, 629 F.2d at 584 (noting that the misrepresentation exception "bar[s] suits based on a failure to give any warning to injured parties").

The plaintiffs also accuse the government of negligently inspecting their homes and failing to detect the likely problems associated with future flooding. These claims are likewise precluded by the misrepresentation exception. A negligent inspection, in and of itself, cannot cause injury. Harm can occur (and, thus, liability can attach) only if the inspection leads either to the communication of inaccurate information or to a failure to communicate precautionary information. See Farmers State Sav. Bank v. FmHA, 891 F.2d 200, 202 (8th Cir. 1989) (holding that injuries to FTCA plaintiffs who allege faulty inspection or assessment are "caused by reliance on the representations of government officials and not by reliance on an undertaking that those officials performed negligently"); see also Comm'l Union Ins. Co. v. United States, 928 F.2d 176, 179 (5th Cir. 1991) (holding that the misrepresentation exception covers instances in which "the chain of causation from the alleged negligence to the alleged

injury depends upon the transmission of misinformation by a government agent").  This takes us full circle — and brings the negligent inspection claims within the purview of the misrepresentation exception.  See, e.g., Schneider v. United States, 936 F.2d 956, 961-62 (7th Cir. 1991) (holding that the misrepresentation exception precludes a suit seeking recovery for damages from a federal agency's approval of defective building materials); Baroni v. United States, 662 F.2d 287, 289 (5th Cir. 1981) (per curiam) (holding to like effect in connection with the FHA's underestimation of the predicted flood line for a housing development); cf. Preston v. United States, 596 F.2d 232, 238 (7th Cir. 1979) (holding that an FTCA claim alleging negligent auditing "amounts to an allegation of misrepresentation by implication").

We turn now to the second category of claims:  those related to the government's role in supervising the construction of the plaintiffs' homes.  Invoking the Supreme Court's decision in Block v. Neal, 460 U.S. 289 (1983), the plaintiffs argue that the misrepresentation exception does not apply and that the government may be held liable in tort.  We agree with the first half of this argument but not with the second.

In Block, the Supreme Court ruled that although the misrepresentation exception protects the federal government from liability relating to the negligent communication (or non-communication) of information, "it does not bar negligence actions

-9-

which focus . . . on the Government's breach of a different duty."
Id. at 297. The Court further reasoned that if, as was alleged,
the FmHA undertook an active role in the construction of the
plaintiff's home (thus going far beyond mere assurances regarding
the quality of the structure), it might be held to have assumed an
additional duty under the Good Samaritan doctrine.[2] Id. Such a
duty would obligate the government "to use due care to ensure that
the builder adhere to previously approved plans and cure all
defects before completing construction [which] is distinct from any
duty to use due care in communicating information." Id. Applying
Block, we hold that this second category of claims lies outside the
realm of the misrepresentation exception.

This does not mean, however, that the case should have
been allowed to proceed. The government also invokes the FTCA's
discretionary function exception. On this issue, Block is wholly
inapposite; although the Block Court found that the
misrepresentation exception did not bar the claim there at issue,
it noted explicitly that the question before it did not require

---

[2]As a general matter, the Good Samaritan doctrine imposes a
duty of due care upon one who gratuitously undertakes to perform a
service upon which a plaintiff justifiably relies. See Restatement
(Second) of Torts §§ 323, 324A (1965). The doctrine is recognized
both in federal and Puerto Rico law. See Indian Towing Co. v.
United States, 350 U.S. 61, 69 (1955); Piñeiro Manzano v. Estado
Libre Asociado, 102 P.R. Dec. 795, 801-02 (1974). Puerto Rico law
is relevant on this issue because the FTCA requires a determination
of negligence to be made "in accordance with the law of the place
where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

consideration of "whether recovery is barred by any other provision of the Tort Claims Act, including the exception for . . . a discretionary function." Id. at 294 (citing 28 U.S.C. § 2680(a)).

The discretionary function exception insulates the United States against "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Ascertaining whether the government may invoke this exception involves a "familiar analytic framework." Shansky, 164 F.3d at 690. First, an inquiring court must identify the conduct that allegedly caused the harm. Id. at 690-91. Then, in determining whether Congress sought to shelter that sort of conduct from tort liability, the court must ask two interrelated questions: (1) Is the conduct itself discretionary? (2) If so, does the exercise of discretion involve (or is it susceptible to) policy-related judgments? If both of these queries yield affirmative answers, the discretionary function exception applies and the government is shielded from liability. See United States v. Gaubert, 499 U.S. 315, 322-23 (1991); Berkovitz v. United States, 486 U.S. 531, 536-37 (1988); Irving v. United States, 162 F.3d 154, 162 (1st Cir. 1998) (en banc); see also United States v. Varig Airlines, 467 U.S. 797, 809-10 (1984) ("It is neither desirable nor intended that . . . the propriety of a discretionary

administrative act should be tested through the medium of a damage suit for tort.") (citation and internal quotation marks omitted).

The conduct that lies at the epicenter of the plaintiffs' remaining claims involves the government's failure carefully to supervise the construction of the housing projects and its attendant failure to protect the residents from the easily foreseeable string of floods. These allegations are best handled discretely, as identifying the precise conduct in question resolves much of the requisite analysis.

With respect to the duty to supervise construction, the plaintiffs target the government's role in planning the housing developments, siting the homes in a floodway zone, and allowing them to be built in such a way that they could not withstand the ravages of repeated flooding. The jurisprudence of the FTCA permits us to classify these actions as non-discretionary only if a federal statute, regulation, or policy specifically instructed federal officials to follow a specified course of action. See Gaubert, 499 U.S. at 322; Berkovitz, 486 U.S. at 536; Irving, 162 F.3d at 163. To fill this gap, the plaintiffs point to section 502 of the Housing Act of 1949, 42 U.S.C. § 1472 (2000), and the implementing regulations that were in force when the Salinas housing developments were built.[3] These regulations, the

_____

[3]On June 12, 1980, the regulations cited by plaintiffs were amended to disclaim any possible government liability. See Planning and Performing Construction and Other Development

-12-

plaintiffs asseverate, provided sufficient direction that the conduct in question cannot be deemed discretionary. We therefore examine the regulations' content and purpose.

Section 502 of the Housing Act authorized (and still authorizes) the Secretary of Agriculture to extend financial assistance to qualified individuals "to enable them to construct, improve, alter, repair, or replace dwellings . . . in order to provide them . . . with decent, safe, and sanitary living conditions." Id. § 1471(a)(1). The regulations in force when construction began in Salinas described the purpose of these loans as being "to give families, who do not have sufficient resources . . . an opportunity to have adequate homes." Neal v. Bergland, 646 F.2d 1178, 1180 (6th Cir. 1981) (quoting 7 C.F.R. § 1822.2). These provisions operate at such a high level of generality that they are of little use to the plaintiffs here. See Shansky, 164 F.3d at 691 (explaining that general directives are insufficient to brand particular conduct as non-discretionary).

The plaintiffs refer to additional provisions in the Housing Act and its implementing regulations that suggest that FmHA must play a role that goes substantially beyond the mere provision

Amendment-Redesignation, 45 Fed. Reg. 39,789, 39,803 (1980) (codified at 7 C.F.R. § 1924.9 (2002)). The revised rules, which are still in force, alert borrowers that they are solely responsible for making the necessary inspections to ensure the quality of their homes. See 7 C.F.R. §§ 1924.9(a), 1924.9(b)(5) (2002).

-13-

of financing for home construction. For example, section 506 of the Housing Act authorized (and still authorizes) the Secretary of Agriculture to provide "technical services such as building plans, specifications, construction supervision and inspection, and advice and information regarding farm dwellings and other buildings." 42 U.S.C. § 1476(a). The earlier regulations suggested that providing adequate supervision was obligatory. See 7 C.F.R. § 1822.7(a) (1977) ("Supervision will be provided borrowers to the extent necessary to achieve the objectives of the loan and to protect the interests of the Government . . . ."); see also Block, 460 U.S. at 291 n.2 (describing the role of FmHA officials under that regulatory regime in assisting borrowers to obtain construction and inspection services).

These regulations cannot carry the weight that the plaintiffs load upon them. Although they intimate that FmHA officials are under an obligation to ensure that borrowers' homes meet certain technical construction standards, they neither direct the manner in which the supervision is to be carried out nor specify the taking of the actions that the plaintiffs claim would have prevented their plight. The regulations do not speak to supervising the planning of a housing development, selecting its location, or making the homes flood-proof at any cost. Deeming administrative action to be non-discretionary requires a specific and directly applicable prescription, see Fagot Rodriguez v. Costa

-14-

Rica, 297 F.3d 1, 10 (1st Cir. 2002), and such a prescription is lacking here. Because the plaintiffs point to no applicable statute, regulation, or policy bearing the requisite degree of specificity, we conclude that the conduct complained of was discretionary. See Shansky, 164 F.3d at 691.

We next turn to the conduct at issue in the plaintiffs' "failure to protect" claim. Here, the conduct complained of is non-conduct, that is, inaction on the part of government officials, resulting in a failure to erect levees or pursue a comparable public works agenda in Salinas. The plaintiffs have offered no statutory or regulatory provisions that provide explicit direction regarding such subjects, and the lack of such directives brands the inaction as discretionary. Fagot Rodriguez, 297 F.3d at 10; Shansky, 164 F.3d at 691.

The short of it is that the plaintiffs can point to no statutory or regulatory provision that requires the performance of any of the charged non-communicative conduct. Consequently, that conduct is within the purview of agency discretion. See Gaubert, 499 U.S. at 324-25 ("For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of a regulatory regime.").

This brings us to the final question: Is this discretionary conduct grounded in policy? There is a presumption

-15-

that it is.  See id. at 324; Irving, 162 F.3d at 168.  In this case, nothing alleged by the plaintiffs regarding either the evolution of the housing projects or the lack of government action to protect residents from floods undermines that presumption.

The driving force behind these claims is the notion that the federal government did not do enough — but such hypothesized interventions, virtually by definition, involve examination of priorities and determinations of need that are at the heart of policy-making.  In a world of finite public resources, government officials must weigh competing considerations in the selection, location, and outfitting of housing projects. While such decisions are often difficult to make (and easy to criticize in hindsight), they are clearly susceptible to policy analysis. See Gaubert, 499 U.S. at 325; Irving, 162 F.3d at 168.  For these reasons, courts have acknowledged the central role of policy considerations in implementing government loan programs and have held that the discretionary function exception shields the government from FTCA claims in similar circumstances. See, e.g., Lundstrum v. Lyng, 954 F.2d 1142, 1146 (6th Cir. 1991) (per curiam) (resting dismissal of FTCA claim on the discretionary function exception because government officials "engage[d] in policy judgments when deciding the most effective and efficient methods to supervise and service FMHA loan recipients"); Pennbank v. United States, 779 F.2d 175, 180 (3d Cir. 1985) (arriving at a similar result because "the

-16-

processes and standards utilized by the agencies . . . clearly involve[d] the exercise of discretion").

That ends this phase of our inquiry. We find that the plaintiffs' claims against the government for negligently supervising the planning and construction of the housing developments and failing to protect home buyers are barred by the FTCA's discretionary function exception. The plaintiffs have suffered great hardships, but an FTCA action is not the proper vehicle to demand accountability for arguably unwise or unthinking decisions made pursuant to administrative discretion.

We need go no further. To recapitulate, we hold that the plaintiffs' claims that the government negligently failed to warn, to inform of impending danger, to mandate flood insurance, and to inspect the homes are all barred by the FTCA's misrepresentation exception. We hold that the plaintiffs' claims that the government failed properly to supervise the planning and construction of the housing projects and to take appropriate measures to prevent future flooding are barred by the FTCA's discretionary function exception. In combination, these holdings confirm that the district court appropriately dismissed the plaintiffs' suit for want of federal subject matter jurisdiction.[4]

---

[4]Because these holdings are dispositive of all the plaintiffs' claims, we need not address other defenses raised by the United States, such as the incidence of the statute of limitations, the effect of the change in the governing regulations as of June 12, 1980 (see supra note 3), and the applicability vel non of the Good

-17-

**Affirmed**.

---

Samaritan doctrine to the facts of this case.