**Carol WOJCIECHOWICZ, et al., Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**Civil Nos. 04–1846(RLA), 04–1856(RLA), 04–2342(RLA).**

United States District Court, D. Puerto Rico.

Dec. 28, 2007.

Doris Quiñones Tridas, Esq., Quiñones Tridas Law Office, Jaime E. Morales–Morales, Esq., San Juan, PR, PHV Franklin F. Bass, PHV Kimberly M. Jagodzinski, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, New York, NY, for Plaintiffs.

John Ashcroft, Esq., U.S. Department of Justice, Washington, DC, Miguel A. Fernandez–Torres, Esq., U.S. Attorneys Office, San Juan, PR, for Defendant.

### ORDER IN THE MATTER OF DEFENDANT UNITED STATES OF AMERICA'S MOTION FOR PARTIAL DISMISSAL BASED ON THE DISCRETIONARY FUNCTION EXCEPTION

RAYMOND L. ACOSTA, District Judge.

Defendant, the United States of America ("USA"), has moved the court to enter partial judgment dismissing for lack of subject matter jurisdiction all claims asserted against it premised on: (1) the lack of an Emergency Obstruction Video Map (EOVM)[1] at the FAA's San Juan Combined En Route Radar Approach Control Center (CERAP) on January 5, 2002, the date of the accident giving rise to this litigation, (2) the lack of Maximum Elevation Figures (MEF's) on the controller's radar screen, and (3) the failure to provide Maximum Safe Altitude Warning System (MSAW) services to decedent Alexander Wojciechowicz during the fatal flight from

---

1. The EOVM is a specially designed electronic video map display a controller may select to have superimposed on his/her radar scope in case of an emergency where a pilot is not able to maintain a safe altitude above ground.

the island of Culebra to the airport in the island of Puerto Rico. According to movant, these claims are barred by the discretionary function exception to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2680(a).

The court having reviewed the memoranda filed by the parties as well as the extensive documentation submitted therewith hereby disposes of the outstanding request as follows.

## BACKGROUND

These consolidated cases [2] arise from the crash of a twin engine Cessna aircraft N441AW into the vicinity of the El Yunque mountain peak of Puerto Rico on January 5, 2002. The aircraft, piloted by Alexander Wojciechowicz, was proceeding from the island of Culebra, off the East coast of Puerto Rico, to the Luis Muñoz Marin International Airport in Carolina, Puerto Rico. In addition to the pilot, four passengers were killed in the accident.

## MOTION TO DISMISS

The court is not circumscribed to the allegations in the complaint in deciding a jurisdictional issue brought pursuant to Rule 12(b)(1) Fed.R.Civ.P. It may also take into consideration "extra-pleading material". 5B Charles Allan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (2d ed.1990) p. 213. "Where movant has challenged the factual allegations of the party invoking the district court's jurisdiction, the invoking party 'must submit affidavits and other relevant evidence to resolve the factual dispute regarding jurisdiction.'" *Johnson v. United States*, 47 F.Supp.2d 1075, 1077 (S.D.Ind. 1999) (citing *Kontos v. United States Dep't of Labor*, 826 F.2d 573, 576 (7th Cir.1987)).

In ruling on a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff. In addition, the court may consider whatever evidence has been submitted, such as the depositions and exhibits submitted in the case. *Aversa v. United States*, 99 F.3d 1200, 1210–11 (1st Cir.1996) (citations omitted). *See also, Shrieve v. United States*, 16 F.Supp.2d 853, 855 (N.D.Ohio 1998) ("In ruling on such a motion, the district court may resolve factual issues when necessary to resolve its jurisdiction.")

## DISCRETIONARY FUNCTION EXCEPTION

The United States Government, as a sovereign, is immune from suit unless it consents to be sued. *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). The FTCA is one such waiver and authorizes suits for damages caused by the negligent acts or omissions of its agents or employees "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). *See also, Abreu v. United States*, 468 F.3d 20, 23 (1st Cir. 2006); *Santoni v. Potter*, 369 F.3d 594, 602 (1st Cir.2004); *Muñiz–Rivera v. United States*, 326 F.3d 8, 12 (1st Cir.2003). The FTCA is a limited waiver of sovereign immunity and thus the waiver permits suits only on the terms and conditions

---

**2.** *See Carol Wojciechowicz v. United States of America,* Civ. No. 04–1856(RLA) (wrongful death action for the deaths of Alexander and Katherine Wojciechowicz) and *U.S. Specialty* *Ins. Co. v. United States of America,* Civ. No. 04–2342(RLA) (aircraft insurer indemnity claim).

strictly prescribed by Congress. *Honda v. Clark*, 386 U.S. 484, 501, 87 S.Ct. 1188, 18 L.Ed.2d 244 (1967).

■ The grant of subject matter jurisdiction to sue the Government is subject to certain Congressionally enacted exemptions which disallow specific types of suits. Should the court find this exception applicable it will lack subject matter jurisdiction to entertain the claims asserted in the complaint. *Muñiz–Rivera*, 326 F.3d at 12; *Wood v. United States*, 290 F.3d 29, 35 (1st Cir.2002).

Exceptions to the liability of the United States appear in 28 U.S.C. § 2680. In relevant part, § 2680(a) exempts actions based on discretionary functions of the federal employees as follows:

(a) Any claim based upon an act or omission of an employee of the Government ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

■ This exception was designed to preclude claims based upon an alleged abuse of discretionary authority by an officer or employee, whether or not negligence was involved. In essence, it seeks to prevent judicial interference, or second-guessing, via a tort action, of legislative and administrative decisions of which there are no specified guidelines.

The three principal Supreme Court decisions which have interpreted this particular provision are: *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); *United States v. Varig Airlines*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984); and *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). These cases have held that in situations where there is no room for judgment or decision no leeway for discretion exists and consequently, no protection from liability via application of the discretionary function exception.

■ The pertinent criteria for this particular immunity has been summarized as follows:

Moreover, assuming the challenged conduct involves an element of judgment, a court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield. The basis for the discretionary function exception was Congress' desire to prevent judicial second guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort. The exception, properly construed, therefore protects only governmental actions and decisions based on considerations of public policy.... In sum, the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment.

*Berkovitz*, 486 U.S. at 536–37, 108 S.Ct. 1954 (citations and quotation marks omitted).

■ Thus, two factors will be examined in determining the applicability of the discretionary function exception, i.e., the existence of discretion and whether or not the type of discretion allowed warrants public policy scrutiny. Initially, the court must ascertain whether the particular conduct at issue involves discretion, i.e., an element of judgment or choice on the part of the agency or employee. In the event that discretion is present the court must then decide whether the discretion in dispute entails public policy considerations involving social, political and/or economic factors. *United States v. Gaubert*, 499 U.S. 315,

325, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Berkovitz v. United States,* 486 U.S. at 536–37, 108 S.Ct. 1954; *Montijo–Reyes v. United States,* 436 F.3d 19, 24 (1st Cir.2006); *Muñiz–Rivera,* 326 F.3d at 15; *Shansky v. United States,* 164 F.3d 688, 691 (1st Cir.1999).

If there is no room for choice the § 2680 exception is inapposite. *Wood,* 290 F.3d at 36; *Magee v. United States,* 121 F.3d 1, 4 (1st Cir.1997).

■ Should the court determine that the government actions are indeed discretionary whether or not these were negligently carried out is of no consequence for purposes of § 2680(a). *Magee,* 121 F.3d at 5 n. 2; *Attallah v. United States,* 955 F.2d 776, 784 n. 13 (1st Cir.1992). "[O]nce governmental actions have been labeled discretionary, it is immaterial whether those actions have been negligently performed for purposes of determining the applicability of the exception in Section 2680(a)." 14 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3658.1 at 639.

■ The applicability of the discretionary exception has been extended to encompass operative decisions.

A discretionary act is one that involves choice or judgment; there is nothing in that description that refers exclusively to policymaking or planning functions. Day-to-day management of banking affairs, like the management of other businesses, regularly require judgment as to which of a range of permissible courses is the wisest. Discretionary conduct is not confined to the policy or planning level.

*United States v. Gaubert,* 499 U.S. at 325, 111 S.Ct. 1267.

### MSAW Services and MEF's Display

In their response to the USA's petition for dismissal plaintiffs conceded they will not claim at trial either that: (1) the failure of the air traffic control to provide MSAW services or (2) the failure to display MEF's on the controller's radar screen were negligent and a proximate cause of the accident.[3] Accordingly, these two arguments raised in defendant's motion to dismiss have been rendered **MOOT**.[4]

### Lack of EOVM

■ Plaintiffs argue that the crash could have been avoided had the FAA installed and used an EOVM[5] at the San Juan CERAP on the date of the accident. According to plaintiffs, FAA Order 7210.3R in effect since at least 1998[6] mandates for EOVM's to be set up at air traffic control facilities furnishing services to areas designated as mountainous terrain. It is plaintiffs' position that the FAA Order, as written, does not allow the agency any discretion regarding its application.

In pertinent part, FAA Order 7210.3R reads:

**3.** *See* Plaintiffs' Memorandum of Law in Opposition (docket No. 60).

**4.** Plaintiffs do note that as part of their theory of liability they will assert at trial that regardless of the fact that the MSAW was inhibited and that no Maximum Elevation Figures were displayed on the controller's screen, the controller was negligent in failing to issue a Terrain/Obstruction Safety Alert with the information available to him. See Plaintiffs'

Memorandum of Law in Opposition (docket No. 60) p. 2–3.

**5.** The EOVM is a specially designed electronic video map display a controller may select to have superimposed on his/her radar scope in case of an emergency where a pilot is not able to maintain a safe altitude above ground.

**6.** *See* Plaintiffs' Memorandum of Law in Opposition (docket No. 60) p. 10 n. 9.

3–9–4 EMERGENCY OBSTRUC-TION VIDEO MAP (EOVM)

a. An EOVM shall be established at all terminal radar facilities that have radar coverage in designated mountainous areas and an available channel in their video mappers. This map is intended to facilitate advisory service to an aircraft in an emergency situation wherein an appropriate terrain/obstacle clearance minimum altitude cannot be maintained.

. . . . .

c. EOVM Use: The EOVM shall be used and the advisory service provided only when a pilot has declared an emergency or a controller determines that an emergency condition exists or is imminent because of the inability of an aircraft to maintain the appropriate terrain/obstacle clearance minimum altitude/s.

Defendant, on the other hand, contends that the aforementioned provision is not compulsory and that San Juan CERAP's decision not to have one installed in its facilities prior to the accident[7] is barred under the discretionary function exception.

In support of its position that installation was not required in January 2001—the date of the accident—defendant points to a February 24, 2000 report of an FAA "Full Facility Evaluation" of the San Juan CERAP carried out from February 1–10, 2000, which included an "informal rating"[8]

regarding the lack of an EOVM. Specifically, the evaluation noted:

Although [San Juan CERAP] was, in part, a terminal radar facility that had radar coverage in a designated mountainous are, it did not have an EOVM. The rational for not having a map was that, although it may have met the criteria, the references to video mappers and the fact that the maps were digitally generated led facility personnel to believe the requirement did not apply. After reviewing the requirements, the evaluation team agreed that applicability was vague and that further guidance was required before a final decision could be made.

In the October 8, 2002 report of a subsequent evaluation carried out from September 16–20, 2002, the lack of an EOVM was characterized as "deficient".[9] According to the report, "[San Juan CERAP] has not developed an EOVM map. This item was identified as informational on the last FFE conducted during February 2000."

The Government contends that its reasons for not installing the EOVM prior to the October 2002 evaluation fall under the discretionary function exception and hence, its absence is not actionable under the FTCA. Thus, the issue becomes whether, given the seemingly mandatory wording of the FAA Order, it is still subject to discretionary exceptions and if so, whether the purported discretion exercised by the San Juan CERAP is imbued with the policy

---

7. According to Felipe Fraticelli, the EOVM was eventually installed in either March or May of 2003.

8. "An informal rating may be assigned to any ... item that may be of interest to the [Regional Air Traffic Division] Manager or other readers of the evaluation report at Washington Headquarters." FAA Order 7010.1K, June 1, 1999, p. 3 Definitions "o".

9. "A deficient rating is assigned to a[n] ... operational support item that does not meet national, regional, hub, or local requirements. The manner in which a deficient item is resolved shall be at the discretion of the [Regional Air Traffic Division] manager. Specific applicable references shall be noted at the end of each narrative." FAA Order 7010.1N, December 24, 2112001 p. 2 Definitions "h".

considerations envisioned by *Dalehite* and its progeny.

According to the deposition testimonies of Felipe Fraticelli, San Juan CERAP Air Traffic Manager, and Edward Henderson, defendant's Air Traffic Control expert witness,[10] up to the October 2002 evaluation there were doubts regarding the applicability of the FAA Order due to the "hybrid" nature of the San Juan CERAP which provided both terminal as well as "en route" services. Additionally, there were concerns as to whether the technological equipment available at the time had the capability of displaying the EOVM.

■ Upon reviewing the facts as presented by the parties we conclude that the decision not to have the EOVM installed once the FAA Order was issued was based on a difference of opinion regarding its interpretation of the order rather than on an exercise of discretion as contemplated by the applicable caselaw. The parties agree that at least by 2000 the San Juan CERAP was a terminal radar facility with coverage in designated mountainous areas. Further, defendant has not presented any evidence of a lack of an available channel, the other requisite set forth in FAA Order 7210.3R.[11] Faced with this scenario, there was no room for discretion on the part of the San Juan CERAP not to have one installed as mandated by the FAA Order.

[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive. And if the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect.

*Berkovitz,* 486 U.S. at 536, 108 S.Ct. 1954.

Lastly, we note that apart from the compulsory nature of the FAA Order, the concerns raised prior to the 2002 evaluation which led to the decision not to have one installed are not couched on the social, economic and/or political policy considerations envisioned in *Dalehite* and its progeny.[12] That is, the information on record does not denote that the challenged determination involved the required exercise of policy judgment for the discretionary exception to the FTCA to come into play.

## CONCLUSION

Based on the foregoing, the Defendant United States of America's Motion for Partial Dismissal (docket No. **56**)[13] is disposed of as follows:

Any negligence claims based on the failure of the air traffic control to provide MSAW services or to display MEF's on the controller's radar screen have been rendered **MOOT**.

The request to dismiss plaintiffs' claim based on the failure to have an EOVM installed at the San Juan CERAP facilities prior to 2001 for lack of jurisdiction under

---

**10.** *See* Henderson Tr. 30–32 and Fraticelli Tr. 127.

**11.** *Cf. Ellen v. United States,* 2002 WL 463357 (9th Cir.2002) (failure to install EOVM barred by discretionary function exception because no channel on video mappers was available at the time).

**12.** The 2000 evaluation team concluded that its applicability was "vague" whereas, in the fall of 2002 under the same circumstances, the lack of the EOVM was deemed "deficient".

**13.** *See also,* Plaintiffs' Memorandum of Law in Opposition (docket No. 60); Defendant's Reply (docket No. 63) and Substitute to Exhibit "C" (docket No. 65).

the discretionary exception to the FTCA is **DENIED.**

IT IS SO ORDERED.