**Juanita SANCHEZ, et al., Plaintiffs,**

v.

**UNITED STATES of America, et al., Defendants.**

**Civil No. 09–1260 (DRD).**

United States District Court, D. Puerto Rico.

March 31, 2010.

Gabriel I. Penagaricano–Soler, Gabriel I. Penagaricano Law Office, Guaynabo, PR, John Arthur Eaves, Jr., John Arthur Eaves Law Offices, Jackson, MS, PHV Hiram Eastland, Jr., Eastland Law Of-

fices, PLLC, Greenwood, MS, Steven R. Perles, Perles Law Firm, P.C., Washington, DC, for Plaintiffs.

John Adam Bain, Margaret Jane Mahoney, U.S. Department of Defense, Washington, DC, Miguel A. Fernandez–Torres, Isabel Munoz–Acosta, United States Attorneys Office, District of Puerto Rico, San Juan, PR, for Defendants.

## OPINION AND ORDER

DANIEL R. DOMINGUEZ, District Judge.

## I. BACKGROUND

Plaintiffs in the instant action, which arises under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq*, are 7,125 residents of the island of Vieques who allege that for six decades they shared the 18–mile–long island with the United States Navy ("the Navy"), a neighbor who Plaintiffs allege illegally used explosives, ordnance and contaminants on the island in open violation of several federal laws. Plaintiffs further contend that the Navy never warned them of the safety risks associated with their operations and that, eventually, Plaintiffs suffered severe health damages resulting from the environmental impact of the Navy's operations.

At the outset, the Court notes that Plaintiffs in the instant case bear a heavy burden as they are bound by the precedent established in *Abreu v. United States*, 468 F.3d 20 (1st Cir.2006), wherein the First Circuit established that the discre-

tionary function exception to the FTCA applied to claims arising from the same Naval operations in Vieques[1] of which Plaintiffs complain. Plaintiffs attribute these damages to the Navy's use of the island and its surrounding waters as a firing range and weapons testing ground. On September 5, 2007, Plaintiffs in the instant case filed a *Complaint* (Docket No. 3) in the District Court for the District of the District of Columbia. Subsequently, on March 11, 2008, Plaintiffs filed their *First Amended Complaint* (Docket No. 15). Therein, Plaintiffs included eight causes of action arising under Puerto Rican common law: negligence; wrongful death; survival; negligent infliction of emotional distress; trespass; nuisance; civil taking; and fear and fright. Initially, Plaintiffs named as Defendants the United States of America, the United States Department of Defense, Secretary of Defense Robert M. Gates, the United States Department of the Navy, and Secretary of the Navy Donald C. Winter (collectively "Defendants"). Subsequently, however, Plaintiffs voluntarily dismissed the case against all Defendants except the United States (Docket No. 19).

In the *First Amended Complaint*, Plaintiffs allege that they suffered injuries and damages as a result of "chronic, long term, negligent and/or deliberate exposure to toxic dust and contamination, hazardous waste and environmental damage" caused by Defendants. Plaintiffs allege that explosives, ordnance and contaminants[2] were released into the Vieques environ-

---

1. The First Circuit in that case found that "the military activities carried out by the Navy on Vieques over the past several decades have involved discretionary decision-making of the most fundamental kind, requiring balancing competing concerns of secrecy and safety, national security and public health." *Abreu*, 468 F.3d at 26 (internal quotations omitted).

2. According to the *Amended Complaint*, this group of substances included napalm, agent orange, depleted uranium, white phosphorous, chemical weapons, arsenic, lead, mercury, cadmium, copper, magnesium, lithium, perchlorate, TNT, PCBs, solvents, pesticides and chaff.

ment during the Navy's operation of the Atlantic Fleet Weapons Training Facility (AFWTF) on the island[3] which have damaged both the environment and, by extension, Plaintiffs. Plaintiffs further aver that toxins, heavy metals and contaminants remain in the environment as Defendants did not safely dispose of the waste resulting from their operations on the island. Additionally, Plaintiffs claim that their injuries and damages are the result of long-term exposure to the toxins and hazardous waste released into the environment during the Navy's operations of warfare testing programs[4] on Vieques. Plaintiffs note that the cancer rate on Vieques is 30% higher than on the mainland.

Plaintiffs cite several federal statutes which they claim Defendants violated in the course of their operations on Vieques. First, Plaintiffs aver that Defendants violated internal guidelines, policies and directives under the Federal Facilities Compliance Act ("FFCA"), 42 U.S.C. § 6961. They assert that this statute "imposed ... on the ... Navy a duty to follow all pertinent and relevant federal and local regulations and statutes on Vieques." Plaintiffs allege that Defendants' violative behavior consisted of poisoning and destroying the environment, as well as Defendants' subsequent failure to clean up the testing area in order to protect the residents of the island. Plaintiffs note that the Environmental Protection Agency ("EPA") has instituted enforcement actions to require the Navy to conduct groundwater studies and clean up any contamination found through these studies.

Further, Plaintiffs allege that the Navy violated a requirement of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq*, by operating the open burning/open detonation facility at the AFWTF without a valid RCRA permit. Plaintiffs also make brief reference to the fact that the EPA has listed the AFWTA on the Federal Facilities section of the National Priorities List, which guides the EPA in determining which sites where hazardous substances, pollutants or contaminants have been released warrant further investigation by the EPA.

Plaintiffs also assert that "further mandatory internal environmental regulations were violated by the Defendants' (sic) bombing activities and weapons exercises, burning and open detonation of hazardous waste, and failure to remediate the environmental despoliation." Plaintiffs point to 32 CFR § 700.832 for the proposition that Navy commanders must comply with federal, state and local authorities to prevent, control and abate environmental pollution, as well as for the proposition that officers must report any inability to comply with environmental law up the chain of command. Plaintiffs also cite 10 U.S.C. § 2705 for the proposition that the Secretary of Defense was required to take action to ensure that the EPA and state and local authorities received notice of events related to the release of hazardous substances. Plaintiffs further note that 10 U.S.C. § 2705 mandates that, if the Secretary established a technical review committee or restoration advisory board, he would be required to consult the board as to many issues pertaining to the environ-

---

**3.** The Navy's operation of the AFWTF spanned a time-period extending from World War II until 2003.

**4.** In the *Amended Complaint*, among general allegations of activities which spanned lengthy time-periods, Plaintiffs include specific allegations regarding the release of de-

pleted uranium rounds on February 19, 1999, the mistaken destruction of buildings at Observation Post–1 in 1995, and the sinking of the *USS Killen*, which stored barrels of unknown and potentially hazardous materials at the time, in 1975.

ment. Finally, Plaintiffs allege that OP-NAVINST 5090.1B CH–2 § 20–5.1 establishes that the Navy's policy is to "monitor compliance with environmental requirements; identify problems, their root causes, process improvements, and pollution prevention opportunities; and, ensure appropriate corrective actions and process improvements are completed." Ultimately, Plaintiffs' claim now centers on a theory that these regulations "created a web of reporting requirements that should have triggered a warning to the people of Vieques" and that such warnings have never been issued.

On March 16, 2009, after the U.S. District Court for the District of the District of Columbia granted Defendant the United States' (hereinafter "Defendant") request that the case be transferred for lack of venue (Docket No. 22), the case was transferred to the U.S. District Court for the District of Puerto Rico. Subsequently, Defendant filed a motion to dismiss for lack of subject matter jurisdiction on May 18, 2009 (Docket No. 30). Therein, Defendant argues first that Plaintiffs bear the burden of proving that subject matter jurisdiction under the FTCA and that the Court must address the issue of whether it exercises subject matter jurisdiction in the instant case prior to evaluating the case on its merits pursuant to Federal Rule of Civil Procedure 12(b)(1). Defendant further argues that the determination of whether Defendant waived its sovereign immunity to Plaintiff's damages claims under the FTCA is, in fact, a determination regarding the existence of subject matter jurisdiction and should, therefore, be addressed at the outset of the instant case.

Defendant then asserts that the FTCA's discretionary function exception deprives the Court of subject matter jurisdiction in the instant case because (1) the challenged governmental conduct is discretionary rather than mandatory[5] and (2) the challenged conduct was based in public policy. Thus, Defendant argues that sovereign immunity is not waived under the FTCA where, as here, a plaintiff's claims allege violations of regulatory provisions of a statute that would undermine the policies of the regulatory statute. To its motion to dismiss, Defendant appended Chapters 1 through 3.2 of a study prepared for the Secretary of Navy in 1999 entitled "The National Security Need for Vieques," the text of OPNAVINST 5090.1B, Chapters 1 and 20, and excerpts from the legislative history of the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA").

On June 15, 2009, Plaintiff opposed Defendant's motion to dismiss (Docket No. 42). Therein, Plaintiff first cites case law from the Third Circuit that supports the proposition that a challenge to subject matter jurisdiction may, in reality, necessitate a factual inquiry. Plaintiff then proceeds to argue against the application of the discretionary functions exception in the instant case, asserting that Defendant's actions violated specific mandatory directives and were not susceptible to policy considerations. Specifically, Plaintiffs assert that Defendants failed to comply with its National Pollution Discharge Elimination System ("NPDES") permit, which constituted a violation of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251–1387. Plain-

---

**5.** With reference to OPNAVINST, Defendant argues that this manual does not specify a particular course of conduct and that, therefore, the Court can not find that this regulation is mandatory. As to the other statutes and regulations cited by Plaintiffs, Defen-

dant's primary argument is that Plaintiffs have made no showing that they are not discretionary, but, rather, rely on conclusory statements that they are, in fact, "mandatory."

tiffs underscore this argument by stating that, by August 27, 1999, the EPA determined that the Navy had violated its permit over 102 times, and that the EPA found that the Navy violated the monitoring requirements of its permit. Plaintiffs further argue that Defendant conducted training exercises with depleted uranium in violation of the Navy's Master Material License, the Navy's Retroactive Material Permit and title 10 CFR part 20. Although Plaintiffs specify the occasion upon which the Navy discharged depleted uranium rounds and broadly allege that this action violated the aforementioned license, permit and regulation, Plaintiff does not specify how these directives were mandatory.

Plaintiffs further assert that their broad allegations that Defendant's activities violated regulations, policies, directives, orders "internal guidelines, policies and mandatory directives" are sufficiently precise to allow the Court to conclude that the actions of which Plaintiffs complain are sufficiently precise to allow the Court to conclude that these actions exceeded the scope of the discretionary function exception. Plaintiffs argue that, if they were allowed to discover the AFWTF range manual, they believe that it would contain further mandatory reporting requirements that might have also been violated. Plaintiffs also submit affidavits which purport to explain how environmental contamination, presumably from the operation of the

AFWTF, caused their injuries and allege that further discovery is necessary to "document" Defendant's alleged violations of 32 CFR § 700.832. Additionally, Plaintiffs assert that OPNAVINST 5090.1B, CH–20, § 20–5.1 mandates that Defendant comply with specific environmental guidelines. Plaintiffs aver that they have pled the existence of these guidelines generally in accordance with Federal Rule of Civil Procedure 8. Additionally, Plaintiffs cite the reports of several experts in support of their contention that Defendant's alleged violations caused Plaintiffs' injuries. Further, Plaintiffs endeavor to distance themselves from earlier plaintiffs in other unsuccessful FTCA lawsuits regarding the Navy's activities on Vieques [6] by emphasizing that they have a stronger showing of causation than those earlier plaintiffs.[7] Finally, Plaintiffs argue that the Navy's duty to monitor the environmental impact of their exercises and to warn Plaintiffs of the alleged dangers posed by the operation of the AFWTF is distinguishable from the Navy's operation of the AFWTF and should, therefore, not be found susceptible to policy analysis. Finally, in the event that the Court should be inclined to grant Defendant's motion, Plaintiffs request that the Court allow limited jurisdictional discovery,[8] stating that "[d]espite Plaintiffs' diligence in requesting information ... there remain numerous relevant documents which are in the exclusive possession of the Navy and not publicly avail-

---

6. *See Abreu,* 468 F.3d 20; *see also Rivera Acevedo v. United States of America,* Civ. 04–1232 & 04–1372, 2005 WL 5610230 (D.P.R. April 25, 2005).

7. The Court notes that Plaintiffs' arguments regarding causation, as is the case with several of Plaintiffs' arguments against Defendant's motion to dismiss, relate to the tort claims which underlie the instant case, rather than to the jurisdictional issue raised by Defendant.

8. As the Court has already denied a substantially identical motion to lift the stay of discovery in the instant case as overly broad and based upon unsupported speculation (Docket No. 58) and as Plaintiffs have offered no new arguments for why the Court should grant jurisdictional discovery in the instant case, the Court hereby **DENIES** this request.

able." Plaintiffs attach several exhibits to their opposition, namely an article entitled "Environmental Impacts of Navy Training," a letter discussing the EPA's findings that the Navy violated its NPDES permit in Vieques with attachments, a letter notifying the Navy that it had violated the Clean Water Act via violations of its NPDES permit with attachments, the affidavits of five experts, excerpts from the Range Manual for the AFWTF, an article entitled "Trace Elements Analysis in Forage Samples from a U.S. Navy Bombing Range (Vieques, Puerto Rico)," the results of an EPA inspection of the AFWTF in 1999, a table of effluent violations in Vieques, a natural resource map of Vieques, a letter submitting a report of depleted uranium recovery operations to the Nuclear Regulatory Commission pursuant to 10 CFR 30.50, a letter from a representative of the EPA to the Environmental Deputy of the Department of the Navy regarding the use of Tris (2ethylhexyl) Phosphate in Vieques, a fact sheet from an unidentified source regarding the EPA and the "cleanup" of Vieques, and a copy of the NPDES Permit issued to the AFWTF by the EPA.

In turn, on July 1, 2009, Defendant replied to Plaintiffs' opposition (Docket No. 45). Therein, Defendants first note that Plaintiffs have not disputed that the alleged violations of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") and the Resource Conservation and Recovery Act ("RCRA") can not overcome the discretionary function exception. Defendants characterize Plaintiffs opposition as relying solely upon alleged violations of its NPDES Permit under the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251–1387, alleged violations of a license, permit and regulation prohibiting the firing of depleted uranium shells, and alleged violations of other "internal regulations." In response, Defendant argues first that

allowing Plaintiffs to rely upon alleged violations of the CWA to overcome the discretionary function exception would undermine congressional intent to limit the available remedies under the Act. Defendant further asserts that Plaintiffs have failed to demonstrate that the Navy violated a specific and mandatory regulation that controlled the Navy's conduct on Vieques and caused Plaintiffs' injuries, despite Plaintiffs' concession that they bear the burden of establishing subject matter jurisdiction. Further, Defendant argues that permit requirements do not specify a course of conduct under the first prong of the discretionary function exception test and that the requirements of the NPDES permit are not sufficiently specific to avoid application of the discretionary function exception. Additionally, Defendant avers that Plaintiffs have failed to show a connection between the alleged permit violations and their claimed health effects.

Furthermore, Defendant argues that Plaintiffs failed to show any causal relationship between the act of firing depleted uranium shells and Plaintiffs' damages. Defendant also argues that Plaintiffs' assertion that it violated unidentified regulations, policies, directives and orders is too vague to establish that the discretionary function exception does not apply. Moreover, Defendant avers that Plaintiffs have not argued that there were any specific and mandatory provisions that required the Navy to warn residents of Vieques. Defendant then asserts that the correct balancing of policy considerations here is to balance military and national security needs against any perceived benefits to public health and the protection of citizens from environmental hazards. Finally, Defendant alleges that Plaintiffs have failed to show how discovery could make any difference regarding their arguments con-

cerning the discretionary function exception and, as a result, the Court should deny their request for discovery. To this last filing, Defendant attaches the Navy's response to the NPDES Notice of Violations, a document entitled "A Summary of ATSDR's Environmental Health Evaluations for the Isla de Vieques Bombing Range" and the AFWTF Range Manual, AFWTFINST 3120.1M.

## II. MOTION TO DISMISS UNDER 12(b)(1)

Where, as in the instant case, the Court is presented with a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the Court should address this matter prior to determining whether the complaint of that case "states a cause of action on which relief could be granted." *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946). "After all, if the court lacks subject matter jurisdiction, assessment of the merits becomes a matter of purely academic interest." *Deniz v. Municipality of Guaynabo,* 285 F.3d 142, 150 (1st Cir.2002).

In order to rule upon an motion to dismiss under Rule 12(b)(1), the court shall apply the same standard of review which is applicable to motions under Rule 12(b)(6). *See Negron–Gaztambide v. Hernandez–Torres,* 35 F.3d 25, 27 (1st Cir.1994); *see also Caraballo–Melia v. Suarez–Dominguez,* Civ. 08–2205, 2010 WL 830958 at *1 (D.P.R. March 4, 2010).

"[T]he general rules of pleading require a short and plain statement of the claim showing that the pleader is entitled to relief." *Gargano v. Liberty Int'l Underwriters,* 572 F.3d 45, 49 (1st Cir.2009) (quoting FED.R.CIV.P. 8(a)(2))(internal quotation omitted). Accordingly, the Court should dismiss a complaint under Rule 12(b)(6) where the complaint does not "state a claim to relief that is plausible on

its face." *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *see also Bell Atlantic v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (establishing the "plausibility" standard). However, the Court "may augment the facts in the complaint by reference to (i) documents annexed to the complain or fairly incorporated into it, and (ii) matters susceptible to judicial notice." *Gagliardi v. Sullivan,* 513 F.3d 301, 306 (1st Cir.2008) (internal quotations omitted). Further, in the context of a Rule 12(b)(1) motion, the Court may "take into consideration extra-pleading material." *Wojciechowicz v. United States,* 530 F.Supp.2d 421, 424 (D.P.R.2007) (quoting 5B Charles Allan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (2d ed.1990) p. 213)(internal quotation omitted). Accordingly, this District Court has previously found that "[w]here movant has challenged the factual allegations of the party invoking the district court's jurisdiction, the invoking party must submit affidavits and other relevant evidence to resolve the factual dispute regarding jurisdiction." *Id.* (internal quotation omitted); *see also Aversa v. United States,* 99 F.3d 1200, 1210–11 (1st Cir. 1996) (finding that "the court may consider whatever evidence has been submitted, such as the depositions and exhibits submitted in the case").

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly,* 550 U.S. 544, 127 S.Ct. 1955, and *Iqbal,* 129 S.Ct. 1937. First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Maldonado v. Fontanes,* 568 F.3d 263, 268 (1st

Cir.2009)(quoting *Iqbal*, 129 S.Ct. 1937)(internal quotation omitted).

█ Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Id.* This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.* Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira–Castillo*, 590 F.3d 31, 41 (1st Cir. 2009). Accordingly, in the instant case, the Court finds that Plaintiff has the burden of establishing that subject matter jurisdiction exists within the parameters of the "plausibility" standard established by *Twombly* and *Iqbal* when confronted with Defendant's 12(b)(1) motion to dismiss.

### III. THE FTCA AND THE DISCRETIONARY FUNCTION EXCEPTION

█ This Court only may exercise jurisdiction over cases in which the United States is named as a defendant only where Congress has waived sovereign immunity. *See Federal Deposit Insurance Corp. v. Meyer*, 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *see also Limone v. United States*, 579 F.3d 79, 88 (1st Cir. 2009). The FTCA is an example of one such general waiver of federal sovereign immunity where the case involves the "tortious acts and omissions of federal employees." *Limone*, 579 F.3d at 88. However, this "general waiver is subject to a litany of exceptions." *Id.* One such exception is the discretionary function exception, which

provides that sovereign immunity is not waived where a claim is "based upon the exercise or performance or the failure to exercise or perform any discretionary function or duty on the part of the Federal agency or employee of the government, whether or not the discretion involved [was] abused." 28 U.S.C. § 2680(a). Where the Court finds that the discretionary function exception applies, it shall attach and prevent suit against the defendant federal entity "regardless of whether the decision-maker acted negligently or manifestly abused the granted discretion." *Fothergill v. United States*, 566 F.3d 248, 254 (1st Cir.2009).

█ The discretionary function exception analysis consists of two prongs: "[1] a court first must identify the conduct that is alleged to have caused the harm, then determine whether that conduct can fairly be described as discretionary, and, if so, [2] decide whether the exercise or non-exercise of the granted discretion is actually or potentially influenced by policy considerations." *Fothergill*, 566 F.3d at 252. Under the first prong, the Court must determine whether the conduct of which a plaintiff complains is discretionary, that is, whether the conduct "involve[s] an element of judgment or choice." Thus, the "discretionary function exception generally does not apply if the activity in question violates a mandatory federal law" as, "[i]n such circumstances, the exercise of discretion is precluded." *Id.* Thus, only matters that "the political branches have left to the actor's choice" qualify under the first prong of the discretionary function exception. *Fothergill*, 566 F.3d at 253. Accordingly, in order to find that the discretionary function exception does not apply, the Court must "identify a specific mandatory directive that [the defendant] had a clear duty under federal law to perform" and, subsequently, failed to perform. *See Cruz*

*v. United States,* Civ. 08–1905, 2010 WL 547621 (D.P.R. Feb. 4, 2010).

 Once the first prong is established, the Court will then determine " whether that judgment is of the kind that the discretionary function exception was designed to shield," that is, whether it is an exercise of discretion that "involves or is susceptible to policy-related judgments." *Abreu,* 468 F.3d at 26 (internal quotations omitted). The Court notes that there is no requirement that the government demonstrate that a policy judgment was made in order to fulfill this prong; rather the Court must only find that the "acts and omissions … are susceptible to policy analysis." *Fothergill,* 566 F.3d at 254. Thus, the "exercise or non-exercise" of discretion shall fulfill the second prong of the discretionary function exception analysis where the Court finds that the decision to exercise or not to exercise discretion is "actually or potentially influenced by policy considerations." *Id.* at 252.

## A. THE FFCA AND THE RCRA

In their *Amended Complaint,* Plaintiffs first assert that the Federal Facilities Compliance Act, 42 U.S.C. § 6961, imposes upon the Navy a duty to follow "all pertinent and relevant federal and local regulations and statutes." Although Plaintiffs make no further arguments regarding this statute in their opposition to Defendant's motion to dismiss, from a reading of the *Amended Complaint,* it appears that Plaintiffs believe that this statute provides

the legislative umbrella[9] under which other of their arguments regarding statutes which they claim overcome the discretionary function exception fall. Thus, in the *Amended Complaint,* Plaintiffs allege that this statute was violated when the Navy caused environmental damage on the island and, subsequently, failed to clean up this damage. Interestingly, however, in Plaintiffs' subsequent arguments against Defendant's motion to dismiss, Plaintiffs argue that Defendant's allegedly violative actions stem primarily from a failure to warn Plaintiffs of potential health and safety dangers stemming from environmental degradation. In fact, Plaintiffs later argue emphatically that the allegedly violative action of which they complain was not the Navy's use of the island, which resulted in environmental damage, nor Defendant's failure to clean up the damage. Rather, Plaintiffs cite this failure to warn as the primary underlying violation.

 Applying the first prong of the discretionary function exception test to this statute, the Court can not find that Plaintiffs have made a plausible argument that the duty imposed by this statute is mandatory for the purpose of the Court's inquiry. In fact, as Plaintiffs have not directly addressed this statute in their opposition to Defendant's motion to dismiss, the Court must find that Plaintiffs have not presented the Court with any argument whatsoever regarding the non-application of the discretionary function exception to the FFCA.

9. This interpretation puzzles the Court as 42 U.S.C. § 6961 is, in reality, simply the federal facilities section of the RCRA, 42 U.S.C. § 6901 *et seq*, which "govern[s] the extent to which federally operated facilities … are subject to the requirements of" the RCRA. *See United States Dep't of Energy v. Ohio,* 503 U.S. 607, 614 n. 4, 112 S.Ct. 1627, 118 L.Ed.2d 255 (1992). Although the Court

finds, therefore, that Plaintiffs' apparent argument that this statute provides the framework under which their arguments regarding other statutory claims find is misplaced, the Court, acting out of an abundance of caution, will analyze whether this statute does, in fact, overcome the discretionary function exception when standing alone.

▉ Further, the First Circuit has already determined in *Abreu,* another case involving substantially similar claims brought against Defendant by residents of Vieques, that, as Congress has "manifested its desire to limit RCRA suits" against the government and as, if the Court were to allow Plaintiffs to bring an "action based on the FTCA" it would constitute the enforcement of the "RCRA under the guise of a FTCA claim." *See* 469 F.3d at 32. Accordingly, the First Circuit held in that case that a damage action under the FTCA based upon a RCRA violation was not available. *Id.* The First Circuit based this decision in part upon the principle that a finding that sovereign immunity was waived in such a case would "subvert a congressional decision to preclude regulated entity liability in the statute." *Id.* at 30. As Plaintiffs have failed to raise any argument as to why this reasoning should not apply in the instant case, the Court can not find that Plaintiffs have reached the level of "plausibility" mandated by *Twombly* and *Iqbal.* Accordingly, the Court must find that Plaintiffs have not met their burden of pleading nor showing that subject matter jurisdiction exists in this FTCA case over claims arising from any alleged violations of the FFCA based upon a theory that Defendant waived its sovereign immunity.

▉ Further, the Court finds that, as outlined above, the First Circuit has already decided that the discretionary function exception applies to RCRA claims. Thus, as Plaintiffs have made no arguments to the contrary, the Court finds that Plaintiffs may not base their FTCA case on claims arising from an alleged violation of the RCRA. The Court further notes that this District Court has previously ruled on the issue of whether the Navy held a valid permit under the RCRA, a claim that underlies Plaintiffs' claims regarding alleged violations of that statute, and has answered that question in the positive. *See Rivera Acevedo v. United States of America,* Civ. 04–1232 & 04–1372, 2005 WL 5610230 at *6 (D.P.R. April 25, 2005). Thus, even if the Court were to conduct the discretionary function exception analysis as to the RCRA anew, it would not find that the conduct which allegedly caused the harm, that is, the failure to hold a valid permit, even existed. Accordingly, even if the Court were to decide anew whether the discretionary function exception applied in the instant case, the Court could not find that Plaintiffs had reached the threshold of plausibility regarding their claims which stemmed from an alleged violation of this permit requirement. Thus, the Court concludes its inquiry into the application of the discretionary function exception to the RCRA with an affirmative answer by stating that the exception does, in fact, apply to claims arising from the RCRA.

## B. CERCLA AND 32 C.F.R. § 700.832 AND 10 U.S.C. § 2705

▉ In their *Amended Complaint,* Plaintiffs also allege that the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 provides a framework via which the EPA is guided in "determining which sites warrant further investigation" in order to implement and finance appropriate remedial actions. Although Plaintiffs make no arguments for why such a directive would not fall within the discretionary function exception and, as such, deserve to forfeit any such argument upon a motion to dismiss as they have not met the "plausibility" threshold, Plaintiffs also appear to rest their arguments in favor of subject matter jurisdiction arising from two other sources upon the foundation of this statute. Accordingly, viewing the pleadings and the response to Defendant's motion to dismiss in a man-

ner deferential to Plaintiffs, the Court will move on to analyze these two sources.

First, in the *Amended Complaint,* Plaintiffs allege that the Navy, via its commanders, violated 32 C.F.R. § 700.832[10] by failing to comply with the regulations contained therein, an act which Plaintiffs allege "led to the continuing dangerous conditions on Vieques." In pertinent part, the text of that regulation reads:

> Environmental pollution:
>
> The commanding officer *shall* cooperate with Federal, state and local governmental authorities in the prevention, control, and abatement of environmental pollution. If the requirements of any environmental law cannot be achieved because of operational considerations, insufficient resources or other reason, the commanding officer *shall* report to the immediate superior in the chain of command. The commanding officer *shall* be aware of existing policies regarding pollution control, and should recommend remedial measures when appropriate.

32 C.F.R. § 700.832 (emphasis ours). Thus, Plaintiffs appear to argue that the commanders of the Navy had a duty to prevent, control and abate environmental pollution, as well as a duty to report up the chain of command where this was not possible.

Plaintiffs emphasize the repeated use of the word "shall" in this regulation. In fact, Plaintiffs appear to assert that the use of this word, which, under general principles of statutory interpretation, renders the action which it modifies compulsory, creates a mandatory directive which is sufficiently powerful to defeat Defendant's claims that the discretionary function exception applies in the instant case. However, the Court finds nowhere in the body of this regulation a truly mandatory directive that dictates a specific action, or even a narrow group of actions. Although the regulation arguably mandates that commanding officers take some action, the regulation is wholly unspecific as to what action must be taken. In fact, the regulation utterly fails to contemplate a specific course of conduct, but, rather, imposes a general duty to try to prevent, control and abate harm to the environment, a duty whose exercise is unspecific and which actually creates an exception within the body of the regulation itself for cases where "the requirements of any environmental law cannot be achieved." Accordingly, even the arguably mandatory provisions of this regulation do not bear sufficient heft to render this regulation "mandatory" for the purposes of the Court's discretionary function exception analysis. Further, the Court notes that if, as asserted by Plaintiffs in their opposition to the motion to dismiss, their true theory is that Defendant failed in its duty to warn residents, Plaintiffs have established no connection between this regulation, which relates to the prevention of environmental pollution and a duty to report within the Navy's chain of supervision, and this theory based on a failure to warn.

Accordingly, the Court shall proceed to analyze the second prong of the discretionary function exception analysis. The Court notes that its sole duty under this prong is to determine whether the discretionary judgment allowed under the regulation at question is the type which is "susceptible to policy-related judgments," and not whether such a policy analysis was

---

**10.** The Court notes that Plaintiffs mistakenly cited this regulation as *300* CFR § 700.832 in the *Amended Complaint.* However, after reading the text of the regulation in conjunction with subsequent filings, the Court was able to determine that Plaintiffs indeed intended to cite to 32 CFR § 700.832.

actually performed. *See Fothergill,* 566 F.3d at 254; *see also Abreu,* 468 F.3d at 20. In the instant case, as the theory under which Plaintiffs proceed is currently unclear, for the sake of thoroughness the Court shall analyze this prong in relation to each theory.

At first, in their *Amended Complaint,* Plaintiffs appeared to argue that their damages were caused by the government's degradation of the environment via the Navy's military operations on Vieques, as well as the government's subsequent failure to mitigate this degradation via clean-up measures. As already addressed in *Abreu,* the discretionary function exception to the waiver of sovereign immunity under the FTCA generally precludes claims based upon the Navy's operation of military training facilities. 468 F.3d at 26. In that case, the First Circuit noted that this outcome was based upon a finding that "the military activities carried out by the Navy on Vieques over the past several decades have involved discretionary decision-making of the most fundamental kind, requiring balancing competing concerns of secrecy and safety, national security and public health." *Id.* (internal quotations to district court opinion omitted). Plaintiffs have presented the Court with no persuasive argument for why this finding regarding the policy decisions which were inherent in the operation of military training exercises on the island does not apply with equal force in the instant case. Accordingly, the Court must find that any argument by Plaintiff that the application of the discretionary function exception to claims of environmental degradation or a failure to remedy such degradation allegedly arising from violations of 32 C.F.R. § 700.832 fails equally upon the second prong as upon the first.

However, perhaps cognizant of the impotence of their arguments under this first theory, Plaintiffs presented the Court with a second theory, which, as discussed above, is premised upon a failure to warn residents of potential health and safety dangers rooted in environmental degradation on the island. However, the Court finds this argument equally unconvincing. Although the *Abreu* court did not reach such an argument, other courts have convincingly ruled upon similar matters and have held that the military's duty to warn of potential dangers stemming from their activities are "fraught with ... public policy considerations," including "competing concerns of secrecy and safety, national security and public health." *Loughlin v. United States,* 393 F.3d 155, 164 (D.C.Cir.2004); *see also In re Consol. U.S. Atmos. Testing Litig.,* 820 F.2d 982 (9th Cir.1987). Like these courts, this Court finds that public policy concerns run as strong under a theory that Defendant had a duty to warn Plaintiffs of potential health and safety concerns as to prevent or mitigate environmental degradation. Accordingly, the Court finds that 32 C.F.R. § 700.832, even read in conjunction with the CERCLA's framework guidelines, does not fall outside the ambit of the discretionary function exception. Thus, the Court may not allow Plaintiffs to proceed with claims under the FTCA based upon Defendant's alleged failure to comply with this regulation.

Plaintiffs also raise 10 U.S.C. § 2705 in their *Amended Complaint,* alleging that it imposed upon the Secretary of Defense a duty to "take action to ensure the EPA and appropriate State and local authorities in Vieques received prompt notice of" the alleged environmental degradation and its threat to the health of the residents of Vieques.[11] Plaintiffs fail to present the

---

11. Plaintiffs also note that this statute impos-

es a duty to consult with a review committee

Court with any subsequent argument which would survive the *Twombly* "plausibility" analysis regarding why this statute overcomes the discretionary function exception.

However, again acting out of an abundance of caution, the Court shall proceed to ascertain if the exception should, in fact, apply here. The text of 10 U.S.C.A. § 2705(a) provides that:

[t]he Secretary of Defense shall take such actions *as necessary* to ensure that the regional offices of the Environmental Protection Agency and appropriate State and local authorities for the State in which a facility under the Secretary's jurisdiction is located receive prompt notice of each of the following:

(1) The discovery of releases or threatened releases of hazardous substances at the facility.

(2) The extent of the threat to public health and environment which may be associated with any such release or threatened release.

(3) Proposals made by the Secretary to carry out response actions with respect to any such release or threatened release.

(4) The initiation of any response action with respect to such release or threatened release and the commencement of each distinct phase of such activities.

(emphasis ours). Viewing this statute, it becomes apparent to the Court that no mandatory directive exists therein. In fact, the language of the statute itself provides that the Secretary of Defense must only take such action as is deemed "necessary" in the listed situations. As a determination of what is "necessary" in any given situation is an inherently varied and speculative inquiry, which may vary from any one person to another, the Court must find that this statute is, indeed, discretionary in nature. *See e.g. Loughlin v. United States,* 286 F.Supp.2d 1, 16–19 (D.D.C.2003)(discussing 10 U.S.C.A. § 2705 in a case based upon the allegedly negligent handling and disposal of munitions by the United States and finding that the discretionary function exception applied). Further, the Court finds that the discussion of the policy considerations above regarding Plaintiffs' two theories applies equally under this statute as under 32 C.F.R. § 700.832. Accordingly, the Court finds that the discretionary function exception bars Plaintiffs' claims which arise from any alleged violation of 10 U.S.C.A. § 2705.

### C. OPNAVINST 5090.1B

██ Plaintiffs further base their FTCA claims on a theory that a violation of OPNAVINST 5090.1B CH–2 § 20–5.1 occurred. From subsequent filings, it appears to the Court that the OPNAVINST's full title is the "Navy Environmental and Natural Resources Program Manual." Although Defendant, in its motion to dismiss, points out that Plaintiff has not alleged any specific course of conduct which violates this manual, Plaintiffs have argued that they believe that they could find regulations that would give teeth to this provision through discovery.

As a preliminary matter, the Court notes that it has already determined that such discovery is inherently speculative and that to grant this request would constitute the improper sanctioning of a fishing expedition. *See e.g. Universal Comm'cn Sys., Inc. v. Lycos, Inc.,* 478 F.3d 413, 425–426 (1st Cir.2007)(finding

---

or restoration advisory board where one is established. However, as Plaintiffs make no allegation that such a board or committee was even formed, the Court shall not address this portion of the statute herein.

that the District Court in that case did not err in denying preliminary discovery where the request was based on "sheer speculation" and would result in a "fishing expedition"). Thus, the Court can not find any merit in Plaintiffs' argument that OPNAVIST would overcome the discretionary function exception in conjunction with some unspecified and unknown regulation or manual. Further, the Court notes that other courts have been extremely reluctant to find that any manual, particularly one that relates to the military, could be considered a "mandatory" guideline. *See Aragon v. United States,* 146 F.3d 819, 824 (10th Cir.1998)("[a]n agency manual, in contrast to a regulation, is not necessarily entitled to the force and effect of law."); *see also Loughlin,* 286 F.Supp.2d at 11; *see also Bowman v. United States,* 848 F.Supp. 979, 983–84 (M.D.Fla.1994)(holding that a Navy manual was not a mandatory regulation). Accordingly, even if Plaintiff had propounded an argument that OPNAVINST should, standing alone, overcome the discretionary function exception, the Court would be extremely reluctant to agree with this argument as the document is the type of military manual which is not "necessarily entitled to the force and effect of the law." *See Aragon,* 146 F.3d at 824. Thus, the Court finds that Plaintiffs have set forth no plausible reason why subject matter jurisdiction would arise from OPNAVINST and, accordingly, shall not allow Plaintiffs to make any claims based upon an alleged violation of this manual.

### D. THE CLEAN WATER ACT AND THE NPDES PERMIT

■ Plaintiffs also mention in passing the Clean Water Act, 33 U.S.C. §§ 1251–1387, within their *Amended Complaint* and this statute, via arguments regarding the EPA's finding that the Navy violated its NPDES permit, became a focal point of later argumentation when Plaintiffs highlight this permit in their opposition to Defendant's motion to dismiss. Although the *Abreu* court already specifically addressed the application of the Act in the context of environmental litigation stemming from the military's operations in Vieques, Plaintiffs attempt to distance themselves from this earlier suit by stating that their claims are based on violations of the NPDES permit, rather than the existence of the permit. Accordingly, the Court shall perform the discretionary function exception analysis in order to determine whether a violation of the permit would constitute a violation of a mandatory law or a discretionary law which lacks the requisite policy considerations.

Plaintiffs' arguments regarding the CWA rest on the following alternative limitations imposed by the NPDES permit: "(1) [w]ater quality based numerical limits, as required by the Puerto Rico EQB Certification of October 11, 1983 which assured compliance with EQB's water quality standards, as provided by Section 401(d) of the Clean Water Act; or (2) natural background concentrations (NBCs), whichever concentration is higher." The permit also stated that "at no time shall the maximum values contained in the effluent exceed the water quality standards after mixing with the receiving water." Thus, Plaintiffs argue, the numerous violations of this permit outlined by the EPA in 1999 constituted violations of this mandatory directive.

At first glance, the language above arguably appears to create a mandatory monitoring and compliance requirement. The citation to limitations set by external sources for water quality standard appears to set forth an inflexible water quality guideline with which the Navy was obliged to comply. However, the Court must find that this argument is a red herring as Plaintiffs' true argument is that the Navy's violation of the permit constituted a viola-

tion *of the CWA.* Thus, the pertinent question is not whether Defendant violated an allegedly mandatory provision of the permit as the inquiry does not center around whether the permit was a mandatory law or regulation, but, rather, whether the CWA falls outside the scope of the discretionary function exception, rendering the alleged violation of the permit issued under this Act actionable under the FTCA.

The CWA is a comprehensive regulatory statute that specifically provides for limited private causes of action, within which remedies available are strictly limited to injunctive relief, the assessment of civil penalties and attorney's fees, and in which compensatory damages are unavailable. 33 U.S.C. § 1365; *see also SURCCO v. PRASA,* 157 F.Supp.2d 160, 166 (D.P.R. 2001). Further, the Supreme Court has already found upon a review of the CWA's legislative history, that Congress specifically intended to limit private remedies for CWA violations to the aforementioned statutory remedies, and purposefully excluded claims for compensatory damages. *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 17–18, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). Accordingly, Defendant argues that the First Circuit's analysis of the discretionary function exception's application to the RCRA finds a direct parallel with the CWA. *See Abreu,* 468 F.3d at 30–32. As both statutes reflect the affirmative decision of Congress to "limit the available remedies and to preclude compensatory damages," the Court finds that the *Abreu* analysis that pertained to the RCRA applies with equal force to the CWA and that to allow an FTCA suit based upon violation of the CWA would be to "enforce the [CWA] under the guise of a FTCA claim." *See* 468 F.3d at 31–32. Accordingly, for the identically applicable reasons outlined herein and within *Abreu* and in light of the strong policy considerations outlined

above, the Court finds that the discretionary function exception applies to Plaintiffs' claims which are premised upon violations of the CWA and prevents Plaintiffs from pursuing the same.

### E. MISCELLANEOUS UNIDENTIFIED STATUTES AND REGULATIONS

Plaintiffs also base their claims upon violations of unidentified and unknown statutes and regulations. Such broad, unfounded allegations patently fail to reach the "plausibility" standard of *Twombly* and *Iqbal* as they entirely fail to notify Defendant of the basis for the claims raised against him. As such, any claims based upon these unnamed statutes and regulations must be dismissed.

### IV. CONCLUSION

For the reasons stated above, the Court finds that the discretionary function exception applies to all articulated claims in the instant case. Accordingly, despite the deeply "simpatico," or sympathetic, nature of Plaintiffs' claims against the Navy, whose operations on Vieques have allegedly caused them innumerous potentially severe health damage, we must find that the Court does not have subject matter jurisdiction in the instant case due to the strong presumption for the application of the discretionary function exception, particularly as to the repercussions of military operations upon the adjacent or subsequent civilian population, which has been recognized in this and in other circuits, including in the context of the Navy's operations on Vieques. *See e.g. Abreu,* 468 F.3d 20; *see also Loughlin,* 393 F.3d 155; *see also In re Consol. U.S. Atmos. Testing Litig.,* 820 F.2d 982. Accordingly the Court hereby **GRANTS** Defendant's motion to dismiss (Docket No. 30) and **DISMISSES WITH PREJUDICE** Plaintiffs'

claims. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**