89 F.3d 832
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Michael R. ANGLE, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 95-1015.
 United States Court of Appeals, Sixth Circuit.
 June 20, 1996.
 
 Before: KRUPANSKY, NELSON, and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is an action on behalf of a young child who suffered lead poisoning as a result of eating chips of paint from a window sill in an Air Force family housing unit. The suit was brought against the United States under the Federal Tort Claims Act.
 
 
 2
 The Act effects a limited waiver of sovereign immunity. Subject to a "discretionary function" exception set forth in 28 U.S.C. § 2680(a), the Act provides for governmental liability "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Regardless of local law, § 2680(a) insulates the government from liability "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."
 
 
 3
 Adopting a report and recommendation prepared by a magistrate judge, the district court dismissed the plaintiff's case on the ground that the failure to remove lead-based paint from military housing or to warn residents of the dangers of such paint came within the discretionary function exception. We shall affirm the dismissal.
 
 
 4
 * The Tort Claims Act does not define the term "discretionary function." In the absence of a statutory definition, the Supreme Court has devised a two-part test for determining whether the exception applies in a particular situation. United States v. Gaubert, 499 U.S. 315, 322-323 (1991). First, "[t]he exception covers only acts that are discretionary in nature, acts that 'involv[e] an element of judgment or choice.' " Id. at 322, quoting Berkovitz v. United States, 486 U.S. 531, 536 (1988). Second, the conduct must be "of the kind that the discretionary function exception was designed to shield;" that is, "legislative and administrative decisions grounded in social, economic, and political policy." Id. at 322-323, quoting United States v. Varig Airlines, 467 U.S. 797, 814 (1984).
 
 
 5
 The plaintiff argues that the first part of the test is not met here because there has been no showing that the government consciously considered the costs and benefits of alternative methods of dealing with the lead-based paint problem. The government counters that this is irrelevant, because the exception covers all discretionary conduct that is susceptible to policy analysis.
 
 
 6
 The government's position is clearly supported by caselaw from other circuits. See United States Fidelity & Guar. Co. v. United States, 837 F.2d 116, 120 (3d Cir.) ("it is irrelevant whether the government employee actually balanced economic, social, and political concerns in reaching his or her decision"), cert. denied, 487 U.S. 1235 (1988); In re Glacier Bay, 71 F.3d 1447, 1454 (9th Cir.1995) (same); Allen v. United States, 816 F.2d 1417, 1422 n. 5 (10th Cir.1987) ("It is ... irrelevant whether the alleged failure to warn was a matter of 'deliberate choice' or a mere oversight"), cert. denied, 484 U.S. 1004 (1988).
 
 
 7
 Whether or not the discretionary function exception ought to be applied only where there has been an exercise of deliberate choice, it seems to us that there was such an exercise in the case at bar. The Air Force issued a directive prohibiting the application of lead-based paint to interior residential structures and exterior surfaces accessible to children after June 1981. (Air Force Manual 85-3, Paints and Protective Coatings (June 1981).) This provision implemented a Consumer Products Safety Commission restriction on lead paint for nonindustrial uses. See 16 C.F.R. § 1303.1. Implicit in the adoption of the Air Force manual, we believe, was a decision that existing lead-based paint could be dealt with as it was dealt with here--by painting over the existing paint with non-lead paint, thereby "encapsulating" it, in the course of routine maintenance.
 
 
 8
 An Air Force regulation dealing with "family housing management" provided that "[t]he Air Force has responsibility at each level of command for ... providing livable accommodations in good condition." Contrary to the plaintiff's argument, this is not the type of "mandatory regulation" characterized by the Supreme Court in Gaubert, 499 U.S. at 322, and Berkovitz, 486 U.S. at 536, as making the discretionary function exception inapplicable by "specifically prescrib[ing] a course of action for an employee to follow." The terms "livable accommodations" and "good condition" have a subjective element that necessarily implies discretion on the part of the person responsible for determining how to accomplish the regulatory goals.
 
 
 9
 The case is similar in this regard to Lockett v. United States, 938 F.2d 630 (6th Cir.1991). There the plaintiffs alleged that the Environmental Protection Agency had acted negligently in failing to warn the public and initiate clean-up action immediately upon discovery that a hazardous waste site was contaminated with PCBs. Among the EPA regulations dealing with PCBs was one stating that "all improperly disposed PCBs shall be cleaned up." Id. at 637. The court found that the discretionary function exception applied because the EPA's regulatory scheme did not require a "specific and mandatory response." Id. The effect of the regulations, rather, was to grant "EPA employees discretion to formulate a response" to PCB contamination. Id. Air Force officials were granted a similar measure of discretion in providing "livable accommodations in good condition."
 
 II
 
 10
 The second part of the Gaubert test is also met here; the challenged conduct is of the type that the discretionary function exception was meant to shield. In Gaubert, 499 U.S. at 324, the Court explained that "[w]hen established government policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." So it must be presumed in the case at bar, where established Air Force policy obviously did permit the exercise of discretion.
 
 
 11
 It is true that base commanders could have given blanket warnings to all occupants of family housing, or to those families with children, without incurring the expense of testing all units for lead-based paint. In deciding whether to give such a warning, however, the Air Force would have had to balance the potential effectiveness of a general warning against the possibility that such a warning might cause unfounded fears--and if it had been intended to leave base commanders with no choice but to issue warnings, the regulations would have said so.
 
 
 12
 Relying on cases where the government has been found liable for such clearly defective conditions as broken stairs, inadequate lighting, and missing handrails, the plaintiff argues that all routine maintenance activity by the government in its role as landlord falls outside the discretionary function exception. But none of the cited cases stands for the proposition that the Gaubert test does not apply to maintenance activities conducted by the government as landlord--and encapsulated lead-based paint is hardly in the same category as a broken stair tread, in our view.
 
 
 13
 AFFIRMED.